**STATE OF NEVADA ex rel. its DEPARTMENT OF TRANSPORTATION, Stauffer Management Company and Rhone–Poulenc, Inc., Plaintiffs,**

v.

**The UNITED STATES of America and Atlantic Richfield Company, Defendants.**

**No. CV–S–94–393–DWH (LRL).**

United States District Court,
D. Nevada.

May 13, 1996.

Brian Randall Hutchens, Chief Deputy Attorney General, Carson City, Nevada, for plaintiff State of Nev., Dept. of Transp.

Michael Gallagher, Davis, Graham & Stubbs, Denver, Colorado, for defendant Atlantic Richfield Co.

### MEMORANDUM DECISION AND ORDER

HAGEN, District Judge.

This is an action by plaintiffs under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9607, to recover costs incurred by plaintiffs in removing hazardous waste from property acquired by NDOT in 1987. ARCO was a prior owner of the property, and plaintiffs allege that ARCO's predecessors in interest were responsible for the dumping of hazardous materials many years before CERCLA's 1980 effective date.

Before the court are defendant's objections (# 82) to the magistrate judge's Report and Recommendation (# 81) on defendant's motion for summary judgment (# 39).

Any party may object to a magistrate judge's case-dispositive proposed order, findings, or recommendations. 28 U.S.C. 636(b)(1)(B); F.R.C.P. 72(b); L.R. 510–2. The district court must make a *de novo* determination of those portions of the magistrate judge's report to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. 636(b)(1).

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to

judgment as a matter of law. F.R.C.P. 56. In this case, the parties agree for the purposes of this summary judgment motion that no material factual issues exist. Thus, the issue before the magistrate judge on the motion for summary judgment, and the issue which is now before this court, is purely one of law; to wit, whether CERCLA may be retroactively applied to impose liability on ARCO for acts or omissions occurring before the effective date of the statute. The thrust of ARCO's summary judgment motion is that after the Supreme Court's decision in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), a retroactive reading of CERCLA is no longer viable.

On March 7, 1996, after considering the parties' supporting and opposing memoranda as well as their oral arguments, Magistrate Judge Leavitt filed a Report and Recommendation ("R & R") on ARCO's motion for summary judgment (# 81). Judge Leavitt recommended that the motion be denied. Defendant ARCO subsequently filed specific objections (# 82) to portions of Judge Leavitt's R & R. The court will examine the basis for each of ARCO's objections in turn.

*Negative Implication*

First, ARCO contends that the R & R's use of "negative implication" analysis to ascertain "the required clear statement" of congressional intent is impermissible under *Landgraf.*

As an initial matter, the court notes that *Landgraf* did not set forth a new rule of law regarding retroactive application of legislation. Rather, it clarified that the Supreme Court's decisions in *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1969) (authorizing application of statutory attorney's fees provision to a prevailing party in litigation commenced before the provision's effective date), and *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) (authorizing application of a regulation requiring local housing authority to give pre-eviction notice

of reasons and opportunity to an eviction commenced before issuance of the regulation) did not erode the traditional presumption against retroactivity. *See Landgraf,* 511 U.S. at ——–——, 114 S.Ct. at 1502–03. The Court then held that the Civil Rights Act of 1991, providing for compensatory and punitive damages and a right to a jury trial in Title VII cases, did not apply to cases pending on appeal when the statute was enacted.

Secondly, the court disagrees with ARCO's statement of the *Landgraf* holding. *Landgraf* does not require a clear statement of congressional intent; rather, it requires clear evidence of congressional intent. *See Landgraf,* at ——, ——, ——, 114 S.Ct. at 1505, 1506, 1508.

It is true that the *Landgraf* decision rejected the negative implication argument put forth in that case; however, the Court did not preclude all future use of a negative inference analysis in support of retroactive intent.

In *Shell Oil,* the court reasoned that "Congress implicitly authorized retroactive application of sections 107(a)(4)(A) and (B) by affirmatively limiting retroactive application of the third category of liability, damages to natural resources, section 107(a)(4)(C)[1]." 605 F.Supp. at 1076. In addition, the limitations on expenditures from the Superfund for pre-enactment damages and releases imposed by section 111(d) specifically applied to purposes listed in § 111(b) and § 111(c)(1) and (2) only. The court reasoned

> [i]f the presumption against retroactivity were sufficient to preclude recovery for pre-enactment response costs, it would also be sufficient to preclude recovery for pre-enactment damages to natural resources. Obviously that was not intended. If it were, the limiting provisions of sections 107(f) and 111(d) would be mere surplusage. In order to give meaning to these provisions, one must assume that liability for other damages—costs of removal or remedial action incurred by any

---

**1.** Liability under this section is limited by the last sentence of § 107(f), which provides "[t]here shall be no recovery under the authority of subparagraph (C) of subsection (a) where such dam-

ages and the release of a hazardous substance from which such damages resulted have occurred wholly before the enactment of this Act [enacted Dec. 11, 1980]

other person (§ 107(a)(4)(B))—is not so limited. *Id.*

Here, the magistrate judge found, and for the reasons set forth in the R & R the court agrees, the negative implication analysis set forth in *United States v. Shell Oil,* 605 F.Supp. 1064 (D.Colo.1985) and articulated by the plaintiffs in this case is far more persuasive in the CERCLA context than it was in the *Landgraf* case.

*Deletion of Express Retroactivity Provision*

■ ARCO alleges that "a prior version of CERCLA contained an express retroactivity provision applicable to the entire bill which was deleted by Congress" and cites *U.S. v. $814,254.76* for the proposition that "explicit deletion of a provision the only purpose of which was to provide for retroactive enforcement is strong evidence that Congress intended only prospective application." 51 F.3d 207, 212 (9th Cir.1995). Although the court cannot disagree with this statement, canons of statutory construction counsel that specific provisions should not be viewed in isolation.[2] Context is of crucial importance whether statutory analysis is limited to the text of the statute itself, or where, as here, it extends into the area of legislative history.

Although ARCO neglects to cite to any such express retroactivity provision in the legislative history, the court assumes ARCO refers to § 3072 of the original version of H.R. 7020, which provided as follows:

> The provisions of this subpart and subpart C shall apply to releases of hazardous waste without regard to whether or not such releases occurred before, or occurred on or after, [date of enactment].

This provision was ultimately deleted from H.R. 7020. *Shell Oil,* 605 F.Supp. at 1077. However, as discussed below, that altered version of H.R. 7020 never became law. Therefore, any inferences to be drawn from this particular change must be considered, if at all, in the context of the entire legislative process.

The legislative history is quite a bit more involved than ARCO suggests. As explained in the *Shell Oil* opinion, the version of CERCLA finally enacted was the Senate version of the bill[3]. Many of the original provisions were redrafted. 605 F.Supp. at 1077. Significantly, however, a proposed amendment to the Senate bill limiting liability for damages occurring wholly before enactment sharply distinguished between damages and response costs. *See* 605 F.Supp. at 1077–78. Although that amendment was eventually deleted, the distinction between retroactive damages liability and retroactive response cost liability was maintained in the final version of CERCLA as the §§ 107(f) and 111(d) limitations on recovery of natural resource damages[4]. *Id.* at 1079. Therefore, it is

---

**2.** "[a] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent ... each part or section should be construed in connection with every other part so as to produce a harmonious whole. Thus it is not proper to confine interpretation to the one section to be construed ... The presumption is that the lawmaker has a definite purpose in every enactment and has adapted and formulated the subsidiary provisions in harmony with the purpose ... From this assumption proceeds the cardinal rule that the general purpose, intent or purport of the whole act shall control, and that all parts be interpreted as subsidiary and harmonious." 2A J. Sutherland, *Statutes and Statutory Construction* § 46.05 (4th ed. 1984).

**3.** Two different bills, H.R. 7020 and S. 1480, proceeded through the House and the Senate. The Senate made last-minute amendments to its bill, including the deletion of personal injury liability provisions. The Senate bill, S.1480, was sent to the House, which struck the language of

its own bill and substituted the Senate bill, passing the bill on December 3, 1980. The bill ultimately signed into law retained the House file number, H.R. 7020, apparently because of a requirement that appropriations measures originate in the House. *See Shell Oil,* 605 F.Supp. at 1077, citing *United States v. Reilly Tar & Chemical Corp.,* 546 F.Supp. at 1111. The remarks made in Senate Debate on S.1480 and H.R. 7020 cited to in this opinion's discussion of legislative intent, below, refer to the final version of the bill.

**4.** As explained in the *Shell Oil* opinion, the remaining retroactivity limitations in the proposed amendment were deleted only because the substantive liability provisions for property and personal injury damages were deleted from the statute. 605 F.Supp. at 1079. Thus, the conclusion drawn by ARCO that the deletion of an express retroactivity provision reflects congressional intention to preclude all retroactive application of CERCLA is unsupported by the legislative history.

clear that the entire scheme of the statute contemplates retroactive liability for response costs, but not for natural resource damages.

*Reliance on U.S. v. Shell Oil*

ARCO argues that the R & R's reliance on *U.S. v. Shell Oil,* 605 F.Supp. 1064 (D.Colo. 1985) is misplaced because *Shell Oil* reverses the traditional presumption against retroactivity, clearly an impermissible approach after *Landgraf.* The court finds this objection to be without merit.

Nowhere in the *Shell Oil* opinion is the traditional presumption against retroactivity reversed. In fact, the *Shell Oil* court clearly applied the presumption[5] and found it outweighed by overwhelming evidence of congressional intent on retroactivity. *See United States v. Shell Oil,* 605 F.Supp. 1064, 1069, 1076–77 (D.Colo.1985).

*Effective Date Clause*

ARCO argues that the magistrate judge's R & R erroneously fails to consider the prospective language of § 302(a), CERCLA's effective date clause. This argument is without merit.

The prospective language of § 302(a) referred to by ARCO is nothing more than the word "shall". The section reads: "Unless otherwise provided, all provisions of this Act shall be effective on [Dec. 11, 1980]."

An effective date provision, without more, does not speak to the issue of retroactivity for each section of a statute. *See Landgraf,*

—— U.S. at ——, 114 S.Ct. at 1505. While it is true that a standard effective date provision "indicating the date when an action can first be brought and when the time begins to run for issuing regulations and doing other future acts mandated by the statute" cannot be said to demonstrate that CERCLA was intended to apply retroactively, neither can such a provision "seriously be considered to negate CERCLA's overriding statutory scheme of retroactive liability." *Shell Oil,* 605 F.Supp. 1064, 1075 (D.Colo.1985). The magistrate judge properly evaluated CERCLA's effective date provision and correctly determined that it does not bear on the issue of retroactive liability[6].

*Lack of Clarity in Legislative History*

The magistrate judge found, and this court agrees, that there is ample evidence of clear congressional intent on the retroactive application of the liability provisions of the statute.

ARCO argues that the R & R gives undue weight to partisan statements, improperly disregards the controversy surrounding the retroactivity provision reflected in CERCLA's legislative history, and erroneously equated the general goals of CERCLA, ie cleaning inactive hazardous waste sites, with the "clear intent" required by *Landgraf.*

The court has conducted a *de novo* review of the legislative history[7] of CERCLA, and has concluded that the clear intent of Congress was to provide for retroactive application of the CERCLA liability provisions.[8]

---

5. "My analysis must begin by acknowledging the presumption against retroactive application of statutes. In *United States v. Security Industrial Bank,* 459 U.S. 70 [103 S.Ct. 407, 74 L.Ed.2d 235] (1982), the Supreme Court reaffirmed that "a retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature' ". Thus the first step must be scrutiny of the statutory language to determine whether Congress, in CERCLA, has overridden the usual presumption against retroactive application." 605 F.Supp. 1064, 1069 (D.Colo. 1985) (Citations omitted).

6. ARCO argues that the effective date clause contradicts the negative inference drawn by the magistrate judge from the sections which are to be applied prospectively only. There is no con-

tradiction. The CERCLA effective date merely indicates the date when an action can first be brought and when the time begins to run for issuing regulations and doing other future acts mandated by the statute. As discussed in the text of this opinion, it has no bearing on the retroactivity issue.

7. *A Legislative History of the Comprehensive Environmental Response, Compensation and Liability Act of 1980,* Serial No. 97–14, Vols. I through III, Com.Print, Committee on Environment and Public Works, United States Senate, 97th Congress, 2d Session.

8. *See, e.g.,* Colloquy between Senators Stafford and Hart in Senate Debate on S.1480, Nov. 24, 1980 (term "hazardous substances" in S.1480 will cover existing abandoned radium-contaminated sites in Colorado); Remarks of Rep. Vento

For the reasons stated in the magistrate's R & R, as well as the further reasoning expressed in this opinion and order, the court is in accord with the magistrate judge's finding that Congress clearly intended retroactive liability for response costs incurred as a result of acts committed before CERCLA's enactment.

Because the court finds the magistrate judge correct in his interpretation of the law, the court, pursuant to 28 U.S.C. 636(b)(1)(C) adopts the magistrate judge's Report and Recommendation on defendant's motion for summary judgment in its entirety, subject to the following minor corrections and modifications:

1. The quote on the bottom of page 11 of the magistrate judge's R & R should read, "Of course, ... statutes are usually presumed *not* to operate retroactively." (emphasis added).

2. In the paragraph after the block quotes on page 13 of the magistrate judge's R & R, that portion beginning with "Indeed, no member of the *Landgraf* Court ..." shall be omitted.

**IT IS ORDERED** that defendant's objections to the magistrate judge's R & R are overruled. The R & R is hereby adopted as the opinion and order of this court, subject to the modifications detailed above. Defendant's motion for summary judgment (# 39) is therefore *DENIED*.

## REPORT & RECOMMENDATION

(Motion for Summary Judgment—# 39) [1]

LEAVITT, United States Magistrate Judge.

In 1987 the Nevada Department of Transportation ("NDOT") acquired a 24.28 acre parcel of land as a highway right-of-way in Henderson, Nevada. NDOT discovered that the land contained hazardous waste material which had been generated during World War II as a result of wartime defense production of chlorine gas and magnesium. On April 29, 1994, NDOT, Stauffer Management Co., and Rhone–Poulenc, Inc. filed suit against the United States and Atlantic Richfield Company ("ARCO") under § 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, to recover the costs of remov-

---

in House Debate on S.1480, Dec. 3, 1980 (bill is designed in part "to clean up our environment from past improperly disposed of hazardous wastes"; delay in passage of bill will "prolong the overall danger"); Remarks of Rep. Fisher in House Debate on S.1480, Dec. 3, 1980 (bill will deal with "problems of toxic waste disposed of years ago"); Remarks of Rep. Martin in House Debate on S.1480, Dec. 3, 1980 ("abandoned orphaned collections of unlabeled crud ... will not clear themselves up"); Remarks of Rep. Lent in House Debate on S.1480, Dec. 3, 1980 (RCRA contains a gap "respecting the past disposal of chemical wastes"; it is necessary to "enact legislation to assist in the cleaning of these sites"); Remarks of Rep. LaFalce in House Debate on S.1480, Dec. 3, 1980 (bill "deal[s] with the problem of abandoned waste sites"); Remarks of Rep. Gore in House Debate on S.1480, Dec. 3, 1980 (3000 abandoned hazardous chemical waste sites in the U.S. "need to be dealt with"); Remarks of Rep. Brown in House Debate on S.1480, Dec. 3, 1980 (in contrast to other environmental legislation, this bill deals with "who pays for cleaning up the environmental mess we have created"); *See also,* Statement of Senator Muskie introducing S.1480, Cong.Rec. July 11, 1979 ("Our present laws are not enough ... We must correct those omissions in the law having

to do with past hazardous waste disposal methods."); Letter, September 25, 1979, from Douglas M. Costle, Admin., U.S.E.P.A., to Jennings Randolph, Chairman, Senate Committee on Environment and Public Works, *reprinted in* Senate Report No. 96–848, July 11, 1980 (bill provides for response at "abandoned and inactive" sites; bill "would establish liability for costs expended by the government to clean up past disposal practices that *today* are threatening public health and the environment" (emphasis in original); liability provisions are not retroactive because "they merely codify longstanding common law rules relating to liability for hazardous products and undertakings"); Senate Report 96–848, July 11, 1980, Additional Views of Senators Domenici, Bentsen, and Baker ("S.1480 ... substantially chang(es) existing common law (in some cases retroactively")).

1. The motion before the Court is defendant Atlantic Richfield Company's ("ARCO's") Motion for Summary Judgment on the Non–Retroactivity of CERCLA (#39). The Court has considered the motion, plaintiff Stauffer Management Company's and plaintiff Rhone–Poulenc, Inc.'s opposition (#45), plaintiff State of Nevada's opposition (#47), and ARCO's reply (#48), as well as the arguments of counsel at the hearing on this matter.

ing the hazardous waste. Plaintiffs allege that ARCO is liable because its predecessor-in-interest, the Anaconda Mining Company ("Anaconda"), as well as another company, Basic Magnesium, Inc. ("BMI"), in which Anaconda held stock, were responsible for the dumping of the hazardous materials. Plaintiffs claim they've incurred more than one million dollars in response costs, and will continue to incur cleanup costs caused by the release or threatened release of hazardous substances.

ARCO moves for summary judgment on the ground that CERCLA cannot be applied retroactively to the pre-enactment dumping alleged in this case. The motion raises an issue of first impression: whether CERCLA, which has been applied retroactively by many courts, can still be held to apply retroactively in light of the Supreme Court's opinion in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).[2] ARCO contends that it cannot. For purposes of the instant motion, the parties agree there are no genuine issues of material fact.

## DISCUSSION

On December 11, 1980, Congress enacted CERCLA to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of *inactive* hazardous waste disposal sites." Preamble, CERCLA, Pub.L. No. 96–510, 94 Stat. 2767 (1980) (emphasis added). CERCLA's key liability provision, § 107, 42 U.S.C. § 9607, holds certain persons[3] liable for the costs incurred in responding to and cleaning up hazardous substances and for injury to natural resources. More specifically, subsection (a) provides, in relevant part:

Notwithstanding any other provisions or rule of law, and subject only to the defens-

es set forth in subsection (b) of this section—

.    .    .    .    .

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan; and

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

42 U.S.C. § 9607(a)(4).

As an early leading CERCLA decision recognized, "This provision on its face neither explicitly provides for recovery of response costs incurred before CERCLA's enactment nor explicitly limits recovery only to costs incurred after its enactment." *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1069 (D.Colo.1985). Nevertheless, since CERCLA's enactment, courts have consistently held that CERCLA was intended to apply retroactively. *See, e.g., Shell Oil*, 605 F.Supp. at 1079 ("I conclude that the whole purpose and scheme of CERCLA is retrospective and remedial.... Congress did not explicitly limit or deny liability for response costs incurred before enactment. Consistent with the statutory scheme, I conclude that CERCLA authorizes recovery of pre-enactment response costs."); *United States v. Northeastern Pharmaceutical & Chem. Co.*,

---

**2.** In *Landgraf*, the Court held that the provisions of the Civil Rights Act of 1991 which create a right to recover compensatory and punitive damages and a right to a trial by jury do not apply to the Title VII cases that were pending on appeal when the statute was enacted.

**3.** Under CERCLA, "[t]he term 'person' means an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21).

*Inc.,* 810 F.2d 726, 732–33 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) (*"NEPACCO"*) ("Although CERCLA does not expressly provide for retroactivity, it is manifestly clear that Congress intended CERCLA to have retroactive effect."); *Long Beach Unified Sch. Dist. v. Godwin Cal. Living Trust,* 32 F.3d 1364, 1366 (9th Cir.1994) (recognizing CERCLA's retroactivity); *United States v. R.W. Meyer, Inc.,* 889 F.2d 1497, 1506 (6th Cir. 1989), *cert. denied,* 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990) (same); *United States v. Monsanto Co.,* 858 F.2d 160, 174 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989) (same). Courts have reached this same conclusion "despite CERCLA's proclaimed effective date of December 11, 1980, the alleged absence of language in CERCLA's liability provisions or legislative history supporting retroactive application, or the fact that CERCLA imposed a new kind of liability." *R.W. Meyer, Inc.,* 889 F.2d at 1506.

This Court must now consider whether the substantial body of case law which gives retroactive effect to CERCLA remains viable after *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Pointing to the "many striking parallels" between *Landgraf* and *NEPACCO,* the leading appellate case upholding the retroactive application of CERCLA, ARCO argues forcefully that a careful reevaluation of this issue will compel the conclusion that CERCLA must be limited to prospective application only.

ARCO notes initially that although the law has never favored retroactivity, the Supreme Court found it necessary in *Landgraf* to clarify the retroactivity doctrine because of the confusion engendered by seemingly contradictory canons of statutory construction. On the one hand, the Supreme Court's decisions in *Thorpe v. Housing Auth. of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) and *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), direct courts "to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or

legislative history to the contrary." On the other hand, cases such as *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), simply hold that "[r]etroactivity is not favored in the law." As a result, lower courts tended to reach conflicting results in applying these two lines of cases.

■ Justice Stevens, the author of the *Landgraf* opinion, explained that despite this confusion, "there is no tension between the *holdings* in *Bradley* and *Bowen,*" 511 U.S. at ——, 114 S.Ct. at 1496 (emphasis in original), because these decisions did not undo the well-settled presumption against retroactivity. Rather, as *Landgraf* makes clear, the general presumption against retrospective application of statutes remains unless the new statute simply affects procedure (*Thorpe*) or matters secondary to the principal cause of action (*Bradley*). See *Landgraf,* at —— ——, 114 S.Ct. at 1502–04; *see also Chenault v. U.S. Postal Serv.,* 37 F.3d 535, 538 (9th Cir.1994) ("*Landgraf* created a scheme whereby courts must scrutinize each provision of a given statute to ascertain whether it is substantive or procedural ... if a provision is substantive, a presumption against retroactive application attaches.")). ARCO maintains that "*Landgraf* directs courts not to apply substantive legislation retroactively except in the clearest of cases, where the legislature mandates such application through express, unambiguous terms." Motion at 9.

ARCO notes that even those courts which have interpreted CERCLA to apply retroactively have recognized the statute contains no express provision allowing for retroactive application. *NEPACCO,* 810 F.2d at 732. ARCO contends that this Court's analysis could properly end here because under *Landgraf* the presumption against retroactivity can be overcome only by a clear expression to the contrary. *Landgraf,* 511 U.S. at —— ——, 114 S.Ct. at 1505–06. Nevertheless, to "remove all doubt," ARCO reviews *NEPACCO* in light of the principles enunciated in *Landgraf,* and argues that the *NEPACCO* approach to determining retroactivity is no longer viable. To a limited extent, the Court agrees.

First, CERCLA's effective date clause is not relevant for retroactivity purposes. It provides: "Unless otherwise provided, all provisions of this chapter shall be effective on December 11, 1980." CERCLA § 302(a), 42 U.S.C. § 9652(a). In *NEPACCO*, the court stated:

> We acknowledge there is a presumption against the retroactive application of statutes. We hold, however, that CERCLA § 302(a), 42 U.S.C. § 9652(a), is "merely a standard 'effective date' provision that indicates the date when an action can first be brought and when the time begins to run for issuing regulations and doing other future acts mandated by the statute."

810 F.2d at 732 (quoting *Shell Oil,* 605 F.Supp. at 1075).

As ARCO notes, CERCLA and the statute at issue in *Landgraf,* the Civil Rights Act of 1991 (the "1991 Act"), contain similar effective date provisions.[4] In regard to the 1991 Act, the *Landgraf* Court commented: "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." 511 U.S. at ——, 114 S.Ct. at 1493. The Supreme Court's observation applies with equal force to CERCLA.

Second, the occasional use of past verb tenses within key CERCLA provisions is a thin reed on which to support congressional intent to apply CERCLA retroactively. Nevertheless, *NEPACCO* apparently gave some credence to this argument in the CERCLA context. The court observed that

> [t]he language used in the key liability provision, CERCLA § 107, 42 U.S.C. § 9607, refers to actions and conditions in the past tense: "any person who at the time of disposal of any hazardous substances owned or operated," CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2), "any person who ... arranged with a transporter for transport for disposal," CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), and "any person who ... accepted any hazardous substances for transport to ... sites

selected by such person," CERCLA § 107(a)(4), 42 U.S.C. § 9607(a)(4).

810 F.2d at 733.

ARCO recognizes that the petitioner in *Landgraf* did not even advance this "tenuous" verb tense argument despite the fact that the 1991 Act provides for liability of persons "who enga*ged* in unlawful intentional discrimination." 42 U.S.C. § 1981a (emphasis added). Indeed, the better view is to ignore verb tenses within CERCLA's text for purposes of discerning congressional intent. *See, e.g., State ex rel. Brown v. Georgeoff,* 562 F.Supp. 1300 (N.D.Ohio 1983). In *Georgeoff,* the plaintiff argued that CERCLA should be found retroactive because, *inter alia,* CERCLA § 107(a)(4) provides that "any person who accepts or *accepted* any hazardous substances...." 42 U.S.C. § 9607(a)(4) (emphasis added). The court rejected this argument, commenting:

> The somewhat confused legislative development of the phrase "accepts or accepted" weakens the force of Ohio's argument. In the Senate report on S. 1480, the Senate version of CERCLA, this provision of the statute read "any person who *accepts* any hazardous substances for transport." S.REP. No. 848, 96th Cong., 2d Sess. 31 (1980) (emphasis added). The words "or accepted" do not appear in this report and do not appear in the Senate version of CERCLA until much later, when they were incorporated into a substitute form of the bill. *See* CONG.REC. S14,719 (daily ed. Nov. 19, 1980). At that time, the addition of the words "or accepted" passed unnoticed—hardly the response which would be expected if Congress attached any significance to the addition.

*Georgeoff,* 562 F.Supp. at 1309–10 n. 10. Given the especially amorphous legislative development of this section, this Court agrees that comparing verb tenses within the statutory sections does little to advance the retroactivity analysis.

Nor does simply labeling CERCLA as "remedial" or "restitutionary," as plaintiffs have

---

4. The effective date provision of the 1991 Act, § 402(a), provides: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment."

done here, advance the analysis. In *NEP-ACCO*, the court apparently invoked a "remedial statute" exception to the presumption against retroactivity, characterizing the statutory scheme of CERCLA as being "overwhelmingly remedial and retroactive." 810 F.2d at 733. In *Landgraf*, however, the Supreme Court distinguished between truly "remedial" statutes and those which impose a new type of liability:

> We have sometimes said that new "remedial" statutes, like new "procedural" ones, should presumptively apply to pending cases.... While that statement holds true for some kinds of remedies, we have not classified a statute introducing damages liability as the sort of "remedial" change that should presumptively apply in pending cases.

511 U.S. at —— n. 37, 114 S.Ct. at 1507 n. 37 (citations omitted). The Court found that the 1991 Act, which imposed substantially expanded liability in Title VII cases, undoubtedly was not a mere "remedial" statute for retroactivity analysis purposes. *See id.,* at ——, 114 S.Ct. at 1507. Likewise, CERCLA, which potentially "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed," *id.,* at ——, 114 S.Ct. at 1505, is not merely "remedial."

The Court agrees that after *Landgraf* neither CERCLA's effective date clause, its use of past tense verbs, nor a judicial characterization of the statute as "remedial" will demonstrate that CERCLA was intended to apply retroactively. The Court does not agree, however, that *Landgraf* undermines *NEP-ACCO*'s and *Shell Oil*'s textual analysis of CERCLA. For that reason, as explained below, this Court concludes that CERCLA's provision for response cost liability should continue to be applied retroactively.

In *NEPACCO* and in *Shell Oil* the courts inferred from the presence of two provisions which are expressly limited to prospective application only that other key provisions of CERCLA should be construed to apply both prospectively and retrospectively. ARCO observes, however, that the 1991 Act also contains certain "prospective application only" sections, and yet the Supreme Court in *Landgraf* was unwilling to infer by negative inference that other key provisions of the 1991 Act were intended to apply retroactively as well as prospectively. ARCO therefore contends that the Supreme Court's approach in *Landgraf* dictates that this Court reject the negative inference that other key sections in CERCLA may be applied retroactively. A close comparison of the 1991 Act with CERCLA, however, reveals that ARCO paints with too broad a brush.

In *Landgraf* the petitioner's principal argument was textual, i.e., that the text of the 1991 Act requires that it be applied to cases that were pending when it was enacted. The Court noted that the petitioner's argument, "if accepted, would make the entire Act (with two narrow exceptions) applicable to conduct that occurred, and to cases that were filed, before the Act's effective date." 511 U.S. at ——, 114 S.Ct. at 1489. Her argument centered on three provisions of the 1991 Act which, in her view, expressly provide for prospective application only, and which "together create a strong negative inference that all sections of the Act not specifically declared prospective apply to pending cases that arose before" the date of enactment. 511 U.S. at ——, 114 S.Ct. at 1493.

The three provisions of the 1991 Act on which the petitioner relied were §§ 402(a), 402(b), and 109(c). Section 402(a) is the effective date provision. As noted above, the Court observed that § 402(a), standing alone, is not probative of legislative intent. *Id.* Section 402(b) provides:

> CERTAIN DISPARATE IMPACT CASES—Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

It was agreed, however, that this section was intended to exempt a *single* disparate impact case against the Wards Cove Packing Company. *Id.* Finally, § 109(c), which is part of the section that extends Title VII to overseas employers, provides:

> APPLICATION OF AMENDMENTS—The amendments made by this section shall not apply

with respect to conduct occurring before the date of the enactment of this Act.

Plainly, given the broad reach of the 1991 Act and the significant rights which it created, §§ 402(b) and 109(c) play relatively small and tangential roles within the overall statutory scheme. In that regard, the Court observed that the petitioner "places extraordinary weight on two comparatively minor and narrow provisions in a long and complex statute." *Id.* The Court found it unlikely that Congress would choose such an indirect route to convey its intent to apply the 1991 Act retroactively. "Given the high stakes of the retroactivity question, the broad coverage of the statute, and the prominent and specific retroactivity provisions in the 1990 bill, *it would be surprising for Congress to have chosen to resolve that question through negative inferences drawn from two provisions of quite limited effect.*" *Id.* at ——— ———, 114 S.Ct. at 1493–94 (emphasis added).

The role which the "prospective application only" sections play in the overall statutory scheme of the 1991 Act stands in sharp contrast to the role of those sections in CERCLA's statutory scheme. CERCLA's civil liability section, § 107, 42 U.S.C. § 9607, which is silent on the question of retroactivity, sets forth three distinct forms of liability: (1) "costs of removal or remedial action," 42 U.S.C. § 9607(a)(4)(A); (2) "any other necessary" response costs, § 9607(a)(4)(B); and (3) natural resource damages, § 9607(a)(4)(C).[5] Moreover, two sections closely related to the natural resource damages provision do speak to the issue. Under 42 U.S.C. § 9607(f),[6] persons may be held liable for natural resource damages which occurred only *after* the date of CERCLA's enactment. Relatedly, under § 9611(d),[7] no money from the established "Superfund"

may be used for natural resource damages that occurred before the date of CERCLA's enactment.

In *Shell Oil,* the government (as plaintiff) argued that these clearly prospective sections were important "because if Congress had similarly intended to limit recovery of pre-enactment *response* costs, it would have done so explicitly." 605 F.Supp. at 1075 (emphasis added). As to the defendant's attempt to invoke the well-settled canon that statutes are presumed to act retroactively, the court observed:

> Of course, ... statutes are usually presumed to operate retroactively. But the whole scheme of CERCLA was specifically designed to apply retroactively. If the presumption against retroactivity were sufficient to preclude recovery for pre-enactment response costs, it would also be sufficient to preclude recovery for pre-enactment damages to natural resources. Obviously, that was not intended. If it were, the limiting provisions of sections 107(f) and 111(d) would be mere surplusage. In order to give meaning to these provisions, one must assume that liability for other damages—costs of removal or remedial action ... (§ 107(a)(4)(A)), and other necessary response costs ... (§ 107(a)(4)(B))—is not so limited.

*Shell Oil,* 605 F.Supp. at 1075–76.

Hence, the sections of CERCLA which create liability for response costs on the one hand, and damage to natural resources on the other, are hardly "minor and narrow provisions." *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1493. Their impact on CERCLA as a whole stands in sharp contrast to the impact on the 1991 Act of one section which addresses "a single disparate impact [Title VII] lawsuit" and another section which per-

---

**5.** The court in *NEPACCO* commented: "By separately considering the place of each type of liability in the statutory scheme, we can discern Congressional intent with respect to recovery of pre-enactment response costs." 810 F.2d at 736.

**6.** Section 9607(f)(1) provides, in relevant part: "There shall be no recovery under the authority of subparagraph (C) of subsection (a) of this section [*i.e.,* for damages to natural resources] where such damages and the release of a hazardous substance from which such damages resulted

have occurred wholly before December 11, 1980."

**7.** The "Uses of Fund" section provides, in relevant part: "No money in the Fund may be used ... for [natural resource damages] where the injury, destruction, or loss of natural resources and the release of a hazardous substance from which such damages resulted have occurred wholly before December 11, 1980." 42 U.S.C. § 9611(d)(1).

tains only to overseas employers. *Id.* The Supreme Court quite correctly viewed these unrelated sections of the 1991 Act as relatively minor in view of the expansive nature of the Act as a whole. In contrast, CERCLA, 42 U.S.C. §§ 9607(a)(4), 9607(f), and 9611(d)—the sections upon which ARCO draws its textual comparison—are the very core of the statute's liability scheme. While the Supreme Court in *Landgraf* "would be surprised" if Congress had intended the 1991 Act to apply retroactively through negative inference based upon "two provisions of quite limited effect," 511 U.S. at ————, 114 S.Ct. at 1493–94, it is not at all surprising that CERCLA's liability provisions would limited to prospective application as to natural resource damage, without being so limited as to response costs. As the court stated in *Shell Oil*,

> There is good reason to preclude use of CERCLA monies and liability for cleanup of sites where both the release and the damages occurred wholly before enactment. The sites excluded under 107(f) and 111(d) are stable sites, that is, the environment, though damaged, will not deteriorate further. In a world with unlimited funds, such damaged resources could be reclaimed, but Congress apparently decided to utilize the limited resources of the fund created by CERCLA to clean up the thousands of sites ... which are not stable.

605 F.Supp. at 1076.

Thus, I conclude from the statute's explicit limitation on recovery of certain natural resource damages, and its failure to limit retroactive recovery of response costs, that CERCLA authorizes recovery of response costs whether incurred before or after its enactment. I hold that Congress, in CERCLA, has overridden the presumption against retroactive application of statutes.

*Id.* at 1077.

CERCLA has received well-deserved criticism for the absence of an express retroactivity provision. *See, e.g.,* George Clemon Freeman, Jr., *A Public Policy Essay: Superfund Retroactivity Revisited,* 50 Bus.Law. 663, 667–69 (Feb.1995) (after *Landgraf,* inferences supporting retroactivity cannot be drawn simply from statements as to the retroactive or prospective effect of other provisions of a statute); *see also Long Beach Unified Sch. Dist. v. Godwin Living Trust,* 32 F.3d 1364, 1366 (9th Cir.1994) (recognizing that CERCLA has been applied retroactively but that this "policy has attracted criticism.") (citations omitted). The holding in *Landgraf,* however, does not rest on the presence or absence of an express retroactivity provision. Rather, the lower courts are directed to look for *clear congressional intent* on the issue. *See Landgraf,* 511 U.S. at ————, 114 S.Ct. at 1501 ("Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits."). Indeed, no member of the *Landgraf* Court limited his or her search for a clear statement of congressional intent to an express retroactivity provision. Even Justice Scalia, who criticized the majority's willingness to allow the clear statement to be supplied by legislative history as well as the statute's text, did not suggest that an express provision was required in order to overcome the general presumption against retroactivity. *See id.,* at ————, 114 S.Ct. at 1522 ("If it is a 'clear statement' we are seeking, ... the statement must *clearly* reflect general agreement. No legislative history can do that, of course, but only the text of the statute itself.") (emphasis in original).

As set forth above, CERCLA's text and structure reveal clear congressional intent to apply the response cost liability section retroactively. In addition to the textual analysis, however, other well-settled canons of statutory construction confirm that the general presumption against retroactivity has been overcome.

> It has been the established practice in American legal processes to consider relevant information concerning the historical background of enactment in making decisions about how a statute is to be construed and applied. This would especially be true where ... the statutory language is inadequate or unclear. These extrinsic aids may show the circumstances under which the statute

was passed, the mischief at which it was aimed and the object it was supposed to achieve. Although a court may make and pronounce findings about the purpose of a statute, or the mischief it was to remedy, without referring to its historical background, knowledge of circumstances and events which comprise the relevant background of a statute is a natural basis for making such findings. The legal history of a statute, *including prior statutes on the same subject,* is a valuable guide for determining what object an act is supposed to achieve. *Other statutes on the subject, previous to or contemporary with enactment of the statute being construed may also be helpful.*

2A J. SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 48.03 (5th ed. 1992) (emphasis added) (citing, *inter alia, United States v. Ruzicka,* 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946); *Western Pac. R. Corp. v. Western Pac. R. Co.,* 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986 (1953)).

CERCLA was a response to the perceived deficiencies and inadequacies of existing federal environmental protection law, particularly the Resource Conservation and Recovery Act ("RCRA"), Pub.L. No. 94–580, 90 Stat. 2795, codified as an amendment to the Solid Waste Disposal Act, 42 U.S.C. §§ 6901, *et seq. See, e.g., Shell Oil,* 605 F.Supp. at 1070–72; *United States v. Wade,* 546 F.Supp. 785, 792–93 (E.D.Pa.1982) (noting that CERCLA was "designed to plug the gaps" in existing anti-pollution law); Lynda J. Oswald, *Strict Liability of Individuals Under CERCLA: A Normative Analysis,* 20 B.C. ENVTL. AFF.L.REV. 579, 603 n. 94 (1993) ("Congress intended that CERCLA remedy some of the failings of earlier environmental legislation, particularly RCRA, 42 U.S.C. § 6901–92k (1988), which was a *prospective* statute intended to prevent future open dumping and to convert existing dumps to safer facilities, in addition to regulating the treatment, storage, and transportation, and disposal of hazardous waste.") (emphasis added). As the *Shell Oil* court explains, the House Report discusses the problems of RCRA, including the problem that the older statute applied prospectively only:

(c) Deficiencies in RCRA have left important regulatory gaps.

(1) The Act is *prospective* and applies to past sites only to the extent that they are posing an imminent hazard. Even there, the Act is of no help if a financially responsible owner of the site cannot be located.

. . . . .

It is the intent of Committee in this legislation to initiate and establish a comprehensive response and financing mechanism to *abate and control the vast problems associated with abandoned and inactive* hazardous waste disposal sites.

H.R.REP.NO. 1016, 96th Cong., 2d Sess. 22 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6119, 6125 (emphasis added). Further, the same report states:

[RCRA] provided a *prospective* cradle-to-grave regulatory regime governing the movement of hazardous waste in our society. Since enactment of that law, a major new source of environmental concern has surfaced: the tragic consequences of improperly, negligently, and recklessly hazardous waste disposal practices known as the *"inactive* hazardous waste site problem." The unfortunate human health and environmental consequence of these practices has received national attention amidst growing public and Congressional concern over the magnitude of the problem and the appropriate course of response that should be pursued. Existing law is clearly inadequate to deal with this massive problem.

*Id.,* pt. 1, at 17–18, *reprinted in* 1980 U.S.C.C.A.N. at 6120.

■ Other closely related canons of statutory construction are relevant here. "It has thus become a judicial responsibility to find that interpretation which can most fairly be said to be embedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *Nat'l Labor Relations Bd. v. Lion Oil Co.,* 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957) (Frankfurter, J., concurring in part and dissenting in part). Moreover, "[t]he circumstances of the enactment of particular legislation may be particularly relevant to this

inquiry." *Commissioner v. Engle,* 464 U.S. 206, 217, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984) (citing *Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981)). The Supreme Court has also frequently stressed that "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *United States v. Heirs of Boisdore,* 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849) (quoted in many modern cases, including *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of America, Inc.,* 508 U.S. 439, 453, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993), and *Mastro Plastics Corp. v. Nat'l Labor Relations Bd.,* 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1955)). *See also K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) (employing similar language). Perhaps most importantly, throughout the history of American jurisprudence, courts have always searched for extrinsic aids in interpreting legislative intent. "Very early Mr. Chief Justice Marshall told us, 'Where the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived....'" *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952) (quoting *United States v. Fisher,* 2 Cranch 358, 386, 2 L.Ed. 304).

Consistent with CERCLA's statutory scheme and "embedded in the statute" is the undeniable purpose of reaching past conduct and imposing liability, in the form of response costs, against those parties responsible for past environmental contamination. As the *Shell Oil* court reported, CERCLA's "liability scheme was enacted to assure 'that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions.'" 605 F.Supp. at 1072 (quoting S.Rep.No. 848, 96th Cong., 2d Sess. at 13 (1980), U.S.Code Cong. & Admin.News 1980 p. 6119 ("Senate Report")). The Senate Report further explained:

> [S]ociety should not bear the costs of protecting the public from hazards produced in the past by a generator, transporter, consumer, or dumpsite owner or operator who has profited or otherwise benefited from commerce involving those substances and now wishes to be insulated from any continuing responsibilities for the present hazards to society that have been created.

Senate Report at 98. *See also Shell Oil,* 605 F.Supp. at 1073 ("Such a Congressional intent is consonant with the law's underlying precept that holds parties responsible for damages they cause.").

## RECOMMENDATION

Based on the foregoing, the Court is convinced Congress clearly intended CERCLA to reach backward and impose liability upon those who are responsible for ongoing environmental deterioration resulting from wastes which had been dumped in the past. *Shell Oil,* 605 F.Supp. at 1072. For this reason, ARCO's motion for summary judgment (# 39) should be denied.

DATED this 7th day of March, 1996.